UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES EDWARDS,

                Plaintiff,

v.

GINA COURTIER et al.,

                Defendants.

_____/

Case No. 1:25-cv-739

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Wideman and Hoover. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against remaining Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin. Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin remain in the case. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which she[2] complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC personnel in their personal capacities: Dr. Unknown Wideman and Correctional Officer Unknown Hoover. Plaintiff also sues the following members of the MDOC's Gender Dysphoria Recommendation Committee (GDRC) in their personal capacities: Gina Courtier, Dr. Carmen Leon, Dr. Theadia Carey, Dr. James Blessman, David Dawdy, Dr. Fadi Ibrahim, E'Coe Hill, Rosilyn Jindal, and Ali Raziuddin.

Plaintiff alleges that in 2021, she was diagnosed with gender dysphoria. (Compl., ECF No. 1, PageID.4.) At the time of her diagnosis, Plaintiff was asked if she wanted to begin hormone treatment and grow breasts. (*Id.*) Plaintiff was provided with a Patient Information Fact Sheet that set forth the positives and negatives regarding hormone treatment. (*Id.*, PageID.5.) According to Plaintiff, the fact sheet indicated that blood clots could result from hormone treatment. (*Id.*) Plaintiff expressed "deep concern" about that fact due to her age. (*Id.*) Plaintiff was also concerned about other risks, such as high blood pressure, liver problems, and stroke. (*Id.*)

After reading the risks, Plaintiff indicated that she did not want to start hormone treatment and instead wanted to undergo surgery for breast implants. (*Id.*) Plaintiff also noted that hormone treatment was "dangerous for those over 50." (*Id.*) Plaintiff was told that the process was optional and that her decision to not start hormone treatment "would not have any negative effect." (*Id.*)

---

[2] Throughout her complaint, Plaintiff refers to herself using feminine pronouns. The Court, therefore, will do the same when using pronouns to refer to Plaintiff.

Plaintiff asked how her status as a gender dysphoric prisoner would differ from those inmates who were not diagnosed with gender dysphoria. (*Id.*) Plaintiff was told that she would receive special medical accommodations, including privacy showers and housing with another gender dysphoric inmate. (*Id.*) Plaintiff avers that she received those accommodations on or about November 1, 2021, and was immediately removed from her housing assignment with a non-gender dysphoric inmate. (*Id.*)

Plaintiff was transferred to IBC in 2023, and in June of 2023, she was directed to report to the health care department. (*Id.*) Health care staff asked Plaintiff if she would consent to hormone treatment and that the GDRC needed to know Plaintiff's answer. (*Id.*, PageID.6.) Plaintiff "adamantly refused" and said she should not be forced to take hormones or put her health at risk. (*Id.*)

Shortly thereafter, on or about July 6, 2023, Plaintiff learned that she was no longer designated as a gender dysphoric inmate in her medical detail, and that her detail no longer listed her accommodations. (*Id.*) Plaintiff sought an explanation from the health care department but received no response. (*Id.*) Around that time, a non-gender dysphoric inmate was placed in Plaintiff's cell. (*Id.*) Plaintiff made a complaint and was told to "deal with health care about it." (*Id.*) Plaintiff avers that she was forced to remain in the cell with this inmate, and that the other inmate began to harass her after learning from other prisoners that Plaintiff had gender dysphoria. (*Id.*)

Eventually, the other inmate was moved out of Plaintiff's cell after Plaintiff complained. (*Id.*) However, another non-gender dysphoric inmate with connections to gang members was placed in Plaintiff's cell. (*Id.*) Plaintiff went to the counselors for her housing unit, explained that she was afraid to lock in with the other inmate, and that the other inmate was a potential aggressor.

(*Id.*) The counselors told Plaintiff that there was nothing that they could do, and that Plaintiff "should give it a few days to try to make it work." (*Id.*)

On July 15, 2023, Plaintiff told staff that she did not want to be locked into her cell "for fear of harm." (*Id.*, PageID.7.) Plaintiff was given a direct order to go into her cell. (*Id.*) That night, the other inmate "began making unwanted aggressive sexual advances" toward Plaintiff. (*Id.*) Plaintiff avers that she was forced to expose her buttocks, and that the other inmate masturbated while touching Plaintiff. (*Id.*) Plaintiff claims that she was forced to make various sexual poses throughout the night while the other inmate touched her. (*Id.*)

As soon as the cell doors opened early the next morning, Plaintiff ran out and told Defendant Hoover that she was being sexually harassed. (*Id.*) Plaintiff refused to return to her cell. (*Id.*) Defendant Hoover told Plaintiff to "man up" and gave her a direct order to return to her cell. (*Id.*) Plaintiff refused. (*Id.*) Defendant Hoover issued a misconduct ticket for disobeying a direct order, and Plaintiff was taken to administrative segregation. (*Id.*)

That same day, non-party psychologist Ms. Dean came to see Plaintiff in segregation, and Plaintiff told her what had happened. (*Id.*, PageID.8.) Plaintiff asked that the other inmate not receive a misconduct ticket because Plaintiff did not want any problems when she returned to general population. (*Id.*) Plaintiff noted that she "simply want[ed] out of that cell." (*Id.*)

Later that day, Plaintiff saw the Security Classification Committee (SCC) about the situation. (*Id.*) Plaintiff explained that she was gender dysphoric and that a non-gender dysphoric inmate had been placed in her cell. (*Id.*) Plaintiff did not provide much detail for fear of facing more harm upon her return to general population. (*Id.*) The SCC released Plaintiff from segregation, and Plaintiff was placed in a housing unit directly next to her old housing unit. (*Id.*)

Plaintiff avers that inmates from both housing units go to the chow hall at the same time. (*Id.*) During one walk to the chow hall, Plaintiff was approached by gang members. (*Id.*) Those individuals told Plaintiff that she better not involve the other inmate in any "bullshit," and that Plaintiff would have to leave the yard if staff came to the other inmate for any negative reason. (*Id.*)

Days later, however, staff members came to Plaintiff's cell and read a Prison Rape Elimination Act (PREA) complaint out loud. (*Id.*) Staff asked Plaintiff to write a statement and sign it. (*Id.*) Plaintiff was told that psychologist Ms. Dean had filed the PREA complaint on Plaintiff's behalf. (*Id.*, PageID.9.) Plaintiff "immediately felt in the spotlight because other prisoners could clearly hear the conversation." (*Id.*) Plaintiff denied the complaint, told staff members that a mistake had been made, and asked staff not to interview the other inmate about any PREA complaint. (*Id.*)

Thereafter, during a meeting with Ms. Dean, Plaintiff asked Ms. Dean why she had filed a PREA complaint without Plaintiff's consent. (*Id.*) Ms. Dean told Plaintiff that she had a responsibility to do so. (*Id.*) Plaintiff responded that Ms. Dean had a responsibility to contact the GDRC on behalf of Plaintiff to prevent future issues. (*Id.*) Plaintiff explained that she was now in a different housing unit and that she was now experiencing issues during showers because her accommodations had not been restored. (*Id.*) Plaintiff explained that while showering, several inmates would reach in, or try to reach in, and grab her buttocks. (*Id.*) Plaintiff noted further that other inmates tried to fight her under a belief that Plaintiff was "taking her showers on purpose to look at them instead of taking her showers with the other [gender dysphoric] prisoners," and that they would sometimes force Plaintiff out of the shower area. (*Id.*) Ms. Dean told Plaintiff that there was nothing she could do because any solutions must come from the GDRC. (*Id.*)

On or about February 11, 2024, Plaintiff filed a grievance regarding her medical detail not reflecting her gender dysphoria diagnosis. (*Id.*, PageID.10.) Plaintiff's grievance was denied at Steps I and II. (*Id.*) Plaintiff avers that during the grievance process, she learned that her medical accommodations had been terminated because of her refusal to consent to hormone treatment. (*Id.*) Plaintiff subsequently filed another grievance asserting discriminatory treatment. (*Id.*) Ultimately, Plaintiff's grievances were denied at Step III. (*Id.*, PageID.11.)

On or about March 15, 2024, Plaintiff sent a letter to Defendants Courtier and Jindal, asking that her housing and shower accommodations be restored. (*Id.*) Plaintiff also explained the abuse she had been experiencing as a result of losing the accommodations. (*Id.*) Plaintiff did not receive a response. (*Id.*)

On or about August 14, 2024, Plaintiff sent an accommodation request to the ADA coordinator but was told that the matter did not fall under his authority and that Plaintiff would have to go through the GDRC and the health care department. (*Id.*) Plaintiff avers that she had written to several officials on numerous occasions, only to be told that only the GDRC has the authority to restore the accommodations. (*Id.*)

While attempting to seek a resolution, Plaintiff spoke to Defendant Wideman about the issue. (*Id.*) Defendant Wideman told Plaintiff that the GDRC had taken the accommodations away because Plaintiff refused to start hormone treatments and that the GDRC was "weeding out" those who did not take hormones or have breasts. (*Id.*) Defendant Wideman told Plaintiff that he agreed with the GDRC because there were some inmates who were "lying about being gender dysphor[ic]." (*Id.*, PageID.12.) Plaintiff immediately filed a grievance against Defendant Wideman and the members of the GDRC. (*Id.*) The grievance was denied at all three steps of the grievance process. (*Id.*, PageID.12–13.)

Plaintiff avers that while waiting for the Step II response to that grievance, she received notice that the GDRC had restored Plaintiff's housing and shower accommodations with a note that the risk had been resolved. (*Id.*, PageID.13.) Plaintiff contends that at no time had her status as a gender dysphoric inmate been taken away, and that all of the events set forth above occurred while she was still considered be a gender dysphoric inmate. (*Id.*) Plaintiff alleges that all named Defendants were aware that she had been diagnosed with gender dysphoria and should have acted to protect Plaintiff. (*Id.*)

Based upon the foregoing, Plaintiff asserts violations of her Eighth and Fourteenth Amendment rights. (*Id.*, PageID.1.) Plaintiff also mentions retaliation, so the Court will liberally construe Plaintiff's complaint to assert First Amendment retaliation claims as well. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.20.)

## II.    Motion to Appoint Counsel

Plaintiff has filed a motion asking that the Court appoint her counsel to represent her in this matter. (ECF No. 3.) Plaintiff represents that she has limited access to the law library and limited knowledge of the law. (*Id.*, PageID.30.) Plaintiff also avers that her imprisonment limits her ability to litigate this matter, and that if this case proceeds to trial, counsel would be better suited to present evidence and cross-examine witnesses. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel (ECF No. 3).

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth above, Plaintiff asserts violations of her First, Eighth, and Fourteenth Amendment rights.

### A.    First Amendment Claims

At the beginning of her complaint, Plaintiff mentions that all Defendants retaliated against her. (Compl., ECF No. 1, PageID.1.) The Court, therefore, has construed Plaintiff's complaint to assert First Amendment retaliation claims against all named Defendants.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) she was engaged in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Throughout her complaint, Plaintiff avers that the named Defendants that are on the GDRC (all Defendants except for Defendants Wideman and Hoover) retaliated against Plaintiff because of her refusal to start hormone treatments. (*See generally* Compl., ECF No. 1.) Plaintiff also

11

appears to suggest that Defendant Wideman retaliated against her for refusing to start hormone treatment by agreeing with the GDRC's decision and by not taking action to protect Plaintiff.

The United States Court of Appeals for the Sixth Circuit, however, recently noted that protected conduct for purposes of a First Amendment retaliation claim does not encompass refusing medical treatment. *See Heard v. Landfair*, No. 23-1277, 2024 WL 1252399, at *2 (6th Cir. Jan. 2, 2024) (citing *Carter v. Ayala*, No. 1:13-cv-807, 2014 WL 4660320, at *2 (W.D. Mich. Sept. 17, 2014), *aff'd*, No. 17-1506, 2018 WL 2086044 (6th Cir. Jan. 3, 2018)). In *Carter*, this Court noted that a plaintiff cannot "stretch [the] right to refusal of treatment under the Fourteenth Amendment's Due Process Clause into a First Amendment retaliation claim." *Carter*, 2014 WL 4660320, at *2. Therefore, because Plaintiff has not alleged facts suggesting that she engaged in protected conduct when the GDRC terminated her accommodations and when Defendant Wideman indicated his agreement with the GDRC's decision, Plaintiff cannot maintain any First Amendment retaliation claims against these Defendants, and these claims will be dismissed.

Plaintiff's complaint can also be construed to assert a First Amendment retaliation claim against Defendant Hoover. As set forth above, Plaintiff alleges that on July 16, 2023, she told Defendant Hoover that she had been sexually harassed by her cellmate, but that Defendant Hoover told Plaintiff to "man up" and gave an order for Plaintiff to return to her cell. (Compl., ECF No. 1, PageID.7.) Plaintiff refused, and Defendant Hoover issued Plaintiff a misconduct ticket for disobeying a direct order. (*Id.*)

Based on the facts alleged by Plaintiff, Plaintiff states that Defendant Hoover issued the misconduct ticket because Plaintiff refused a direct order to return to her cell, not because of Plaintiff's complaint regarding the sexual harassment she had endured from her cellmate. The Sixth Circuit has explained that "if a prisoner violates a legitimate prison regulation, he [or she] is

not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Disciplining inmates for disobeying direct orders is a legitimate MDOC regulation. *See* MDOC Policy Directive 03.03.105, Attach. B (eff. Mar. 17, 2025). Therefore, any First Amendment retaliation claim against Defendant Hoover fails to satisfy the protected conduct element.

Accordingly, for the foregoing reasons, Plaintiff's First Amendment retaliation claims will be dismissed.[3]

## B.    Eighth Amendment Claims

Plaintiff contends that all Defendants violated her Eighth Amendment rights by demonstrating deliberate indifference to her conditions of confinement and safety in various ways. (Compl., ECF No. 1, PageID.14–18.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

---

[3] In her complaint, Plaintiff references that she filed grievances concerning the revocation of her accommodations for gender dysphoria. The Court notes that the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, however, suggests that she filed the grievances *after* the revocation of her accommodations and after Defendant Hoover wrote the misconduct ticket. Moreover, Plaintiff does not allege any facts from which the Court could infer that Defendants took the actions that they did as a response to Plaintiff's grievances and complaints.

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, she must show that she faced a sufficiently serious risk to health or safety and that the defendant official acted with "'deliberate indifference' to…health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

14

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Defendant Wideman

Plaintiff contends that Defendant Wideman violated her Eighth Amendment rights when Defendant Wideman told Plaintiff that "she was being 'weeded out,' and that he agrees with the [GDRC committee's] method, and took no preventative or protective measures." (Compl., ECF No. 1, PageID.17.) Plaintiff contends that by failing to act, Defendant Wideman displayed deliberate indifference, causing Plaintiff "to ensure suffering, physical injury, and emotional distress." (*Id.*)

However, based on the facts alleged by Plaintiff, she cannot maintain an Eighth Amendment claim against Defendant Wideman premised upon Defendant Wideman's failure to act. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff alleges only that Defendant Wideman informed her about why the GDRC committee had revoked Plaintiff's accommodations and stated that he agreed with that method. Throughout her complaint, Plaintiff avers that only the GDRC, of which Defendant Wideman was not a member, had the authority to reinstate the accommodations. Plaintiff simply cannot maintain an Eighth Amendment deliberate indifference claim against Defendant Wideman based upon the facts that she alleges. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Wideman will be dismissed.

### 2.    Defendant Hoover

Plaintiff alleges that Defendant Hoover violated her Eighth Amendment rights by ignoring Plaintiff's remark that she did not want to return to her cell because she was being sexually harassed. (Compl., ECF No. 1, PageID.18.) Plaintiff contends that Defendant Hoover instead told

Plaintiff to "man up" and issued a misconduct ticket when Plaintiff refused to follow a direct order to return to her cell. (*Id.*) Plaintiff was transferred to administrative segregation for a short time following receipt of the misconduct.

First, placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring Eighth Amendment claims for emotional or mental damages against Defendant Hoover premised upon her placement in segregation because she does not allege any facts suggesting that the short placement in segregation itself caused a physical injury. Accordingly, any purported Eighth Amendment claim against Defendant Hoover premised upon Plaintiff's placement in segregation will be dismissed.

Moreover, Plaintiff cannot maintain a claim against Defendant Hoover premised upon Defendant Hoover's alleged indifference to Plaintiff's safety. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). For a prisoner to state an Eighth Amendment claim, the prisoner must show that the prisoner faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate

indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, while Plaintiff alleges that she told Defendant Hoover about the sexual assault and harassment that Plaintiff was subjected to by her cellmate, Plaintiff's complaint lacks facts from which the Court could infer that Defendant Hoover knew that Plaintiff's cellmate intended to act that way before the abuse and harassment began and disregarded that risk. Moreover, although Plaintiff alleges that, after she told Defendant Hoover about the abuse, Defendant Hoover told her to "man up" and ordered her to return to her cell, Plaintiff refused that order, resulting in her immediate placement in segregation. As set forth above, after she was released from segregation, Plaintiff was placed in another housing unit. Given these facts, the Court cannot conclude that Plaintiff has alleged that Defendant Hoover was aware that a substantial risk of harm to Plaintiff existed, and that he disregarded that risk. Plaintiff's Eighth Amendment claim against Defendant Hoover will, therefore, be dismissed.

### 3.    GDRC Defendants

Plaintiff avers that the GDRC Defendants (Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin) violated her Eighth Amendment rights by revoking her gender dysphoria accommodations for over a year before they were reinstated. Plaintiff contends that these Defendants did so knowing that revocation of these protective precautions would place Plaintiff at a higher risk of danger because, during that time, Plaintiff was forced to take showers with predatory inmates and was forced to house with at least one other inmate who sexually assaulted and harassed her. As set forth above, Plaintiff avers that she wrote to Defendants

Courtier and Jindal about the abuse she experienced, but she did not receive a response, and her accommodations were not restored until months later. Although Plaintiff has by no means proven deliberate indifference, taking her allegations as true and in the light most favorable to her, the Court will not dismiss Plaintiff's Eighth Amendment claims against the GDRC Defendants (Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin) on initial review.

### C.    Fourteenth Amendment Claims

#### 1.    Equal Protection

Plaintiff avers that the GDRC Defendants (Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin) violated her Fourteenth Amendment equal protection rights when they revoked Plaintiff's medical accommodations for gender dysphoria, including her privacy showers and housing. (Compl., ECF No. 1, PageID.18–20.) Plaintiff suggests that by doing so, these Defendants discriminated against her based upon the fact that she refused to start hormone treatment because other inmates diagnosed with gender dysphoria who took hormones or had breasts did not suffer from having their accommodations revoked.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011) (citation omitted). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

The Supreme Court has held that sex-based classifications warrant heightened scrutiny. *See United States v. Virginia*, 518 U.S. 515, 533 (1996). Here, however, Plaintiff does not suggest that she was discriminated against because of her gender dysphoria, but because she refused to start hormone treatment for her diagnosis. Recently, the Supreme Court concluded that "[c]lassifications that turn on . . . medical use are subject to only rational basis review." *United States v. Skrmetti*, 605 U.S. ----, 145 S. Ct. 1816, 1829 (2025).

Here, regardless of whether rational basis or heightened scrutiny applies to Plaintiff's equal protection claims, Plaintiff suggests that she is a member of the class of inmates diagnosed with gender dysphoria and that she was treated differently than others with the same diagnosis because she refused to undergo hormone treatment. Further, although Plaintiff has by no means proven her equal protection claim, Plaintiff has alleged sufficient facts to suggest that the GDRC Defendants were personally involved in the decision to revoke Plaintiff's accommodations solely because Plaintiff did not want to undergo hormone treatment. Therefore, at this stage of proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to her, the Court concludes that Plaintiff's equal protection claims against the GDRC Defendants (Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin) may not be dismissed on initial review.

### 2.    Receipt of Misconduct Ticket

Plaintiff's complaint can also be liberally construed to assert a Fourteenth Amendment due process claim against Defendant Hoover premised upon the fact that Defendant Hoover issued Plaintiff a misconduct ticket for disobeying a direct order. (Compl., ECF No. 1, PageID.7.)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff does not set forth any facts suggesting that she was ever convicted of the disobeying a direct order misconduct ticket. In any event, MDOC policy provides that disobeying a direct order is a Class II misconduct. *See* MDOC Directive 03.03.105, Attach. B (eff. Apr. 18, 2022), Attach B. Class II misconduct convictions do not result in the deprivation of good time or disciplinary credits. And the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). And Plaintiff does not allege that she received any other sanctions that would constitute atypical and significant deprivations. Therefore, any intended procedural due process claim arising from the receipt of the misconduct ticket that Plaintiff asserts against Defendant Hoover will be dismissed.

Furthermore, any intended substantive due process claim against Defendant Hoover also fails to state a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). Here, given that Plaintiff admits that she refused the direct order to return to her cell, the Court cannot conclude that Defendant Hoover's behavior rose to the level of conscience-shocking.

In any event, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff's claim that she was subjected to cruel and unusual punishment. *See Graham*, 490 U.S. at 394 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, any intended substantive due process claim will also be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and deny Plaintiff's motion to appoint counsel (ECF No. 3). Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Wideman and Hoover will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against remaining Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin. Plaintiff's Eighth and Fourteenth Amendment claims against

Defendants Courtier, Leon, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Raziuddin remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 12, 2025                    /s/ Sally J. Berens
                                            SALLY J. BERENS
                                            United States Magistrate Judge